Case 1:21-mj-00339-GMH   Document 1-1   Filed

Case: 1:21-mj-00339
Assigned to: Judge Harvey, G. Michael
Assign Date: 3/30/2021
Description: COMPLAINT W/ARREST WARRANT

## STATEMENT OF FACTS

1. On Wednesday April 29, 2020, members of the Federal Bureau of Investigation (FBI) Washington Field Office (WFO) and Metropolitan Police Department of the District of Columbia (MPDC) Child Exploitation and Human Trafficking Task Force (CEHTTF) received information from an FBI agent assigned to the Baltimore Field Office (BFO) in Maryland. The agent informed your affiant that an individual (hereinafter "Witness #1") contacted the Prince George's County Police Department to report information related to the sexual abuse of a nine-year-old child (hereinafter "Minor Victim #1"). The members responded to a Prince George's County Police Department (PGCPD) Station and interviewed Witness #1.

2. Witness #1 stated that a relative of his (hereinafter "Witness #2") had been involved in a romantic relationship with an adult female (hereinafter "DEFENDANT #1") for the last month. Witness #1 reported that Witness #2 met DEFENDANT #1 via the internet. Witness #1 stated that Witness #2 informed him that DEFENDANT #1 sent him sexually explicit images depicting Minor Victim #1.

3. Witness #2 was interviewed by members of the CEHTTF during the course of this investigation. Witness #2 advised that DEFENDANT #1 had spoken to him about the sexual abuse of Minor Victim #1, and reported that other individuals had also sexually abused the child.

4. Through further investigation by law enforcement, a search warrant (20-SW-115) was obtained from the United States District Court (USDC) for the District of Columbia, authorizing the search of DEFENDANT #1's residence. The USDC search warrant was executed during the early morning hours of April 30, 2020, and Minor Victim #1 was recovered safely from

the residence. DEFENDANT #1 was also inside the residence, and she was arrested.[1] Electronic devices were recovered from the residence, including DEFENDANT #1's cellular phone.

5. DEFENDANT #1's cellular device was turned over to a United States Attorney's Office (USAO) Digital Forensic Examiner on April 30, 2020. The USAO Digital Forensic Examiner conducted a forensic extraction of the device. Your Affiant reviewed the contents of DEFENDANT #1's device and located numerous videos and images depicting the sexual abuse of children. Your Affiant found that the videos and images had also been uploaded to a Dropbox account belonging to DEFENDANT #1.

6. A review of the contents of DEFENDANT #1's Dropbox account revealed four videos of Minor Victim #1 being abused by two different adult men. One of the videos shows an African American male placing his tongue on Minor Victim #1's bare vulva. The man's face is not visible in the video, but the viewer can see that he has a salt-and-pepper patchy beard, which connects to the hairline of his head. He also has salt-and-pepper colored hair, and is shown wearing a black stud style earring. The video is thirty-eight seconds long, and is labeled VID_20191014_230548. The naming convention for this video indicates that the video was uploaded to Dropbox on October 14, 2019. As discussed below, the individual in the video was later identified as Christopher Ham ("**HAM**").

7. As background regarding DEFEDNANT #1, law enforcement has interviewed DEFENDANT #1 with her attorney present on three occasions. During the first interview, members of the CEHTTF showed DEFENDANT #1 photographs of adult men who were linked to DEFENDANT #1 during the course of this investigation and who have displayed a sexual

---

[1] DEFENDANT #1 has been charged with the Sexual Exploitation of Children, in violation of 18 U.S.C. §2251(a) and the Distribution of Child Pornography, in violation of 18 U.S.C. §2252(a)(2). These charges are pending, and DEFENDANT #1 is detained pending trial.

interest in children.     DEFENDANT #1 was shown a photograph of an individual, referred to hereinafter as TARGET #1, and she was asked if she recognized him.  DEFENDANT #1 denied recognizing TARGET #1's photograph during the first interview.  During the second interview, DEFENDANT #1 was again shown a photograph of TARGET #1, and she was again asked if she recognized the individual in the picture.  DEFENDANT #1 admitted that she did, in fact, recognize the person in the photograph and she provided law enforcement with his name.  DEFENDANT #1 admitted that TARGET #1 had visited her home on several occasions, and that he had played with Minor Victim #1.  Law enforcement told DEFENDANT #1 that they had the KIK messages that she exchanged with TARGET #1, and a picture which DEFENDANT #1 sent to TARGET #1, which was a sexually explicit image depicting DEFENDANT #1 holding Minor Victim #1.  DEFENDANT #1 identified the photograph, and confirmed that she is the adult female depicted in this image, with Minor Victim #1 sitting on her lap. After initially attempting to explain that this sexual encounter occurred accidentally, DEFENDANT #1 admitted that TARGET #1 had expressed a sexual interest in children, and a desire to engage in sex acts with a child.  DEFENDANT #1 stated that TARGET #1 had come to her home in 2018 to engage in sex acts with her.  While engaging in sexual activity, DEFENDANT #1 and TARGET #1 decided to involve Minor Victim #1 in the sexual activity.  According to DEFENDANT #1, she engaged in sexual intercourse with TARGET #1 with Minor Victim #1 in the room.  TARGET #1 ejaculated onto Minor Victim #1, while DEFENDANT #1 held the child on her lap.  DEFENDANT #1's description of the events inside her home match what is depicted in a photograph law enforcement has in its possession.  TARGET #1 was subsequently arrested and charged with the Sexual Exploitation of Children, and other related charges.  When interviewed by law enforcement, following his arrest, TARGET #1 admitted that he knew DEFENDANT #1 and that he had been

3

to her home on more than one occasion.  He also admitted that he knew that she had access to a child, and that he had met this child. Furthermore, TARGET #1 admitted to using the KIK accounts that TARGET #1 and DEFENDANT #1 used to discuss engaging in sexual acts, including acts involving Minor Victim #1.  Forensic analysis of the digital devices collected from TARGET #1 corroborated statements made by both DEFENDANT #1 and TARGET #1.  When TARGET #1 was specifically asked if he had ever engaged in the sexual abuse of the minor identified in images sent to him by DEFENDANT #1, the Defendant asked for a lawyer.[2]

        8.      Also during the second interview with law enforcement, DEFENDANT #1 was shown a redacted image of an adult man who can be seen sexually abusing Minor Victim #1 in three separate videos found in DEFENDANT #1's Dropbox Account.  DEFENDANT #1 reported that she knew this adult man, hereinafter TARGET #2, and she provided law enforcement with his nickname.  DEFENDANT #1 accurately described the way TARGET #2 would be listed in the contacts section of her cellular telephone; the town that he lived in; and correctly identified the make and model of the car TARGET #2 was driving at the time he sexually abused Minor Victim #1.  During the third interview, DEFENDANT #1 provided law enforcement with details regarding the sexual activity that she and TARGET #2 engaged in with Minor Victim #1, and she admitted to using her cellular telephone to record the abuse. DEFENDANT #1's description of the sexual activity that she and TARGET #2 engaged in with Minor Victim #1 is consistent with what is depicted in three videos in law enforcement's possession that were found in DEFENDANT #1's Dropbox Account.  TARGET #2 was arrested and charged with the Sexual Exploitation of Children, and other related charges.  During an interview with law enforcement, TARGET #2 admitted that he knew DEFENDANT #1 and that

---

[2] TARGET #1 is deceased.  The Criminal Complaint was dismissed as a result of his death.

he engaged in a sexual relationship with her.  He further admitted that, on one occasion when he was engaging in sexual activity with DEFENDANT #1, he sexually abused Minor Victim #1 while DEFENDANT #1 filmed the abuse.  TARGET #2 admitted that he had seen the videos depicting the sexual abuse of Minor Victim #1 that law enforcement has in its possession.[3]

9. Turning to the video of **HAM**, during the second interview, DEFENDANT #1 was also shown screenshots of the video labeled VID_20191014_230548, described above. DEFENDANT #1 stated that she recognized the man in the video, and that she knew him as Chris Ham.  That was the first time DEFENDANT #1 had been shown that video or any image containing HAM.

10. DEFENDANT #1 further stated that she initially met **HAM** via the internet, but that she later met him in person.  DEFENDANT #1 said that **HAM** came to her home in Washington, D.C. on more than one occasion, and that she knew that **HAM** lived in Maryland. DEFENDANT #1 stated during one visit to her home, **HAM** expressed a sexual interest in children and that he liked to watch Minor Victim #1 sleep DEFENDANT #1 admitted that, on a subsequent occasion when **HAM** was inside her home, he sexually abused Minor Victim #1.  DEFENDANT #1 stated that **HAM** put his mouth on Minor Victim #1's vagina.  DEFENDANT #1 admitted that she used her cellular telephone to video record **HAM** sexually abusing Minor Victim #1. DEFENDANT #1 said that she later sent this video to **HAM**.  DEFENDANT #1 believed that this assault occurred in February 2020.[4]

11. DEFENDANT #1 said that she communicated with **HAM** via Facebook Messenger.  DEFENDANT #1 stated that she put the video in a Dropbox link, and then sent that

---

[3] TARGET #2 remains in custody.  He has been ordered detained pending trial.
[4] Based upon the date that this video appears to be uploaded to Dropbox, October 14, 2019, DEFENDANT #1's recollection of the date and time this incident appears to be incorrect.

5

link to **HAM** via Facebook Messenger. Based upon my training and experience, when a user sends a Dropbox link via Facebook Messenger, the recipient will receive a Facebook message containing the Dropbox link which can then be used to access the specific material from the original sender's Dropbox account. The recipient would not receive an independent message through Dropbox, nor would the recipient have to establish his or her own Dropbox account to access the link. Based on my training and experience, Dropbox does not maintain records, or the IP address or other information of individuals that click on a Dropbox link. As a result, the search warrants results from DEFENDANT #1's Dropbox, which does contain the video in question, has no information about who, if anyone, may have accessed that video via a link.

12. DEFENDANT #1 said that **HAM**'s contact information was in her cellular phone and in her Facebook account. DEFENDANT #1 said that he used the name Chris Ham on Facebook and that was how he was listed in her cellular phone's contact list.

13. Your Affiant reviewed DEFENDANT #1's Facebook account, and the contents of her cellular telephone, in order to locate identifying information about **HAM**. Your Affiant located a Facebook account, that was "friends" with DEFENDANT #1, named "CHRISFAHEEMHAM" (the account).

14. An administrative subpoena was issued by a member of CEHTTF to Facebook for subscriber information and internet protocol (IP) addresses associated with the account. Facebook provided information indicating that the account is registered to a person using the name of "C TheAwakener Ham" with the phone number 301-■■■-4802. The email addresses alphaman95@yahoo.com and cfham@facebook.com were also associated with the account.

15. Your affiant also reviewed the contents of DEFENDANT #1's Facebook accounts, which were obtained pursuant to a search warrant, in an effort to locate Facebook messages

6

exchanged between DEFENDANT #1 and **HAM**.  Your affiant located messages between DEFENDANT #1, using the Facebook account Deee (DEFENDANT #1's last name), and **HAM** exchanged between August 25, 2018 and April 15, 2019.  These messages do not appear to contain references to the sexual abuse of Minor Victim #1. However, on April 15, 2019, **HAM** sent DEFENDANT #1 the following message:

> "Peace!  Just dropping by and seeing how you and the little One
> have been doing.  I pray all is well with you two."

16.     Your affiant also located messages exchanged between DEFENDANT #1, using the Facebook account Deej (DEFENDANT #1's last name), and **HAM** between March 20, 2020 and March 25, 2020.  Your affiant reviewed these messages and observed that DEFENDANT #1 and **HAM** exchanged sexually explicit pictures of themselves.  Your affiant also noticed that **HAM** and DEFENDANT #1 exchanged the following messages on April 6, 2020,

> **HAM**: How cheeks been?[5]
> DEFENDANT #1:  At daycare
> **HAM**: [sends thumps up emoji]…Any new sexual adventures lately
> DEFENDANT #1:  No
> **HAM**: Aight

17.     Your affiant obtained a search warrant for the contents of **HAM**'s Facebook account; the information provided by Facebook pursuant to that search warrant did not include any messages exchanged between **HAM** and Defendant #1.   Despite the lack of Facebook Messages recovered between HAM and DEFENDANT #1 from HAM's account, **HAM** was Facebook friends with both of DEFENDANT #1's Facebook accounts.  He had also liked, viewed, and/or searched for DEFENDANT #1's Facebook accounts on several occasions.  Furthermore, a review

---

[5] Your Affiant has learned, through the course of this investigation, that "Cheeks" is a nickname used by Minor Victim #1.

7

of the images and videos posted to **HAM's** Facebook account show some images of **HAM** wearing a black, stud-style earring which looks similar to the earring depicted in the video described above.

18. The messages exchanged between HAM and DEFEDNANT #1 via Facebook Messenger were recovered only from DEFENDANT #1's account, and were not provided in response to the search warrant executed on HAM's account. The message that DEFEDNANT #1 stated that she sent to HAM with the Drobox link was not recovered from either account. Based upon my training and experience, when a user deletes a Facebook Message, that message is permanently deleted from Facebook servers. Thus, unless the account is preserved prior to the deletion, Facebook does not have the deleted messages to provide in response to a search warrant.

19. Your affiant also located a contact in DEFENDANT #1's phone with the name "Chris Faheem Ham." The contact listed the phone number 301-▮▮▮-4802 and the address ▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Largo, Maryland 20774. The investigation, through surveillance by law enforcement and other methods, has revealed that **HAM** resides at this address.

20. An administrative subpoena was issued to AT&T for subscriber information and call detail records (CDR) for the phone number linked to **HAM**. Records provided by AT&T show that the phone number is registered to Christopher Ham, with the listed mailing address at P.O. Box ▮▮▮ in Capitol Heights, Maryland.

21. Your affiant contacted a United States Postal Service Inspector (USPS) in reference to P.O. Box ▮▮▮ in Capitol Heights, Maryland. Your affiant was advised that the P.O. Box had been registered to **HAM** from November 20, 2015 until December 7, 2020. The phone number 301-▮▮▮-4802 and a Maryland Drivers License (#H500115497640) was provided for the P.O. Box by **HAM.** The USPS Inspector advised that **HAM** had provided a change of address to the USPS

after the P.O. Box was closed on December 7, 2020, which indicated that **HAM** wanted to receive mail at ▮▮▮▮▮▮▮▮▮▮▮▮▮▮ in Upper Marlboro, Maryland 20774.

22. Your affiant reviewed the CDR data provided for the phone number linked to **HAM** and observed that **HAM's** phone number contacted a phone number belonging to DEFENDANT #1 over five hundred times. These phone contacts began on November 5, 2018, and continued through June 20, 2020, even after DEFENDANT #1's phone had been seized by law enforcement.

23. On February 10, 2021, your affiant conducted surveillance at ▮▮▮▮▮▮▮▮▮▮▮▮ in Largo, Maryland, **HAM'S** residence. Your affiant observed a silver Toyota sedan parked directly in front of the staircase at 241 Harry S. Truman Drive. The vehicle had a Maryland registration "3AN0178," and is registered to **HAM** at his residence. Your affiant observed an African-American male exit the apartment building and walk to the trash bin located in the parking lot in front of the apartment building. Your affiant was able to clearly observe this individual and saw that he appeared to have the same patchy salt-and-pepper beard and hair, and his hairline appears to be the same as the individual who is depicted sexually abusing Minor Victim #1 in the video recovered from DEFENDANT #1's Dropbox labeled "VID_20191014_230548."

24. On February 12, 2021, members of CEHTTF interviewed DEFENDANT #1 with her attorney present. DEFENDANT #1 was asked additional questions about her relationship with **HAM.** DEFENDANT #1 stated that she has known **HAM** for approximately six years, and that they met online. DEFENDANT #1 said that this relationship turned sexual a few years after the two of them met. DEFENDANT #1 described that **HAM** has an "urge" related to a sexual interest in children. DEFENDANT #1 said that this was first brought to her attention when they were engaging in sexual acts at her home, in Washington, D.C., and **HAM** told her that he was thinking about Minor Victim #1 when they had sex. DEFENDANT #1 explained that following this

conversation, when **HAM** came to the house, they sometimes had sex with Minor Victim #1 in the room because **HAM** liked to look at Minor Victim #1 while he was having sex with DEFENDANT #1. **HAM** said it excited him. DEFENDANT #1 admitted that on one of HAM's visits to her house, following the initial conversation where he expressed a sexual interest in Minor Victim #1, she recorded a video of **HAM** placing his mouth on Minor Victim #1's vagina.

25. DEFENDANT #1 said that she was under the influence of alcohol at the time, but she believes the recording took place in the living room of her home on Naylor Road in Washington, D.C. DEFENDANT #1 advised that she did not think **HAM** knew she was recording him, but she admitted that she sent the video to **HAM** via a Dropbox link and using Facebook Messenger.

26. DEFENDANT #1 was shown a color photograph of **HAM** and asked if she recognized the individual in the photograph. DEFENDANT #1 viewed the photograph and stated, "That's Ham."

## CONCLUSION

Based on the above information, there is probable cause to believe that Christopher Ham committed the following offenses: Travel with Intent to Engage in Illicit Sexual Conduct, in violation of Title 18 U.S.C. §2423(b), on or about and between January 1, 2018 and October 14, 2019; and First Degree Child Sexual Abuse with Aggravating Circumstances, in violation of D.C. Code §§ 22-3008, 3020(a)(1), 3020(a)(4), on or about and between January 1, 2018 and October 14, 2019.

Respectfully submitted,

_____
Thomas Sullivan
Detective
MPD

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone, this 30th day of March 2021.

_____
G. MICHAEL HARVEY,
U.S. MAGISTRATE JUDGE