**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **UNITED STATES OF AMERICA** : | |
| : | |
| v. : | |
| : | Case Number: 21-mj-339 |
| **CHRISTOPHER HAM,** : | |
| : | Detention Hearing: April 6, 2021 |
| Defendant. : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF**
**PRETRIAL DETENTION OF DEFENDANT CHRISTOPHER HAM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that defendant Christopher Ham be detained pending the trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A), because the offense involves a crime of violence and because there is no condition or combination of conditions that will reasonably assure the safety of any person and the community. The defendant was arrested on April 6, 2021, and he has been charged via Criminal Complaint with Travel with Intent to Engage in Illicit Sexual Conduct, in violation of Title 18 United States Code Section 2423(b), and First Degree Child Sexual Abuse with Aggravating Circumstances, in violation of D.C. Code §§ 22-3008, 3020(a)(1), 3020(a)(4). As detailed below, an analysis of the factors set forth in 18 U.S.C. § 3142 leads to the conclusion that detention is appropriate.

1

## APPLICABLE LEGAL STANDARD

Travel with Intent to Engage in Illicit Sexual Conduct is a felony under chapter 117 and is, therefore, a crime of violence. Furthermore, it is also an offense involving a minor victim under section 2423(b) and thus, under 18 U.S.C. § 3142(e)(3)(E), creates a presumption that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community. This presumption "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released"); *see also United States v. Hir,* 517 F.3d 1081, 1086 (9th Cir. 2008). Even if the defendant does not pose a flight risk, danger to the community by itself is sufficient reason to order pretrial detention. *United States v. Salerno*, 481 U.S. 739, 755 (1987).

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding

militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## I.  Analysis

For the reasons that follow, the government submits that that the defendant cannot rebut the presumption that he shall remain detained, as there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

### A.  Nature and Circumstances of the Charged Offense

The government relies on the Statement of Facts that was filed with the Criminal Complaint. As stated therein, this defendant sought out and developed a romantic relationship with another offender, knowing that this individual had access to a child. The defendant took advantage of this relationship, which allowed him to engage in the horrific sexual abuse of a then eight-year-old little girl. The assault perpetrated on this child was recorded- forever memorializing the abuse that the little girl endured. This factor clearly favors detention, since the defendant's criminal conduct is egregious, and his offenses have been perpetrated against the most vulnerable members of our society: children.

Children depicted in images and videos depicting their sexual abuse are traumatized and victimized in the worst way imaginable at the time the images were created, and they are re-victimized and re-traumatized each and every time an individual, like the defendant, views the

images for their own sexual gratification. As recently explained by the Sixth Circuit in a child pornography case:

> ...we have numerous victims in a case like this, not one victim. Every image of a child, every image of a non-adult engaged in any type of sexual activity or any type of pose without clothing or any type of exploitation constitutes an additional case of victimizing a child. Without a demand for that type of information and that type of viewing from persons like this defendant, we don't know how many child abuse cases we could prevent. And as long as there is a demand to purchase images of child pornography, there is going to be an unending stream of child abuse of…children who are forced into these roles.
>
> ...every image has a child who has been exploited and abused, and that is the concern I have. It is the concern that I have when people are engaged in serially doing this, the effect it has on children throughout the world and the effect it has on their future lives.

*See United States v. Miller*, 665 F.3d 114, 121-122 (6th Cir. 2011)(quoting the district court) (rejecting an attack on the child pornography sentencing guidelines and highlighting the grave harm caused to the victims depicted in child pornography images and the evidence that traffickers and possessors of child pornography are the impetus for the creation of more sexual abuse of minors).

Indeed, Congress has recognized the serious nature of the offense that this defendant is charged with, which is why he faces up to 30 years imprisonment, should he be convicted of violating Title 18 U.S.C. § 2423(b). As such, the defendant should be detained pending trial.

**B. The Weight of the Evidence Against the Defendant**

The weight of the evidence against the defendant is overwhelming. The government is in possession of recorded Facebook communications between the defendant and another individual, who is referenced in the Complaint as DEFENDANT #1. In one of these communications, the Defendant specifically references Minor Victim #1, and asks DEFENDANT #1 if there had been "any new sexual adventures lately." Furthermore, the government is in possession of a video, found in DEFENDANT #1's Dropbox account, which graphically depicts the Defendant's sexual

4

abuse of a defenseless child. This morning, at the time of his arrest, law enforcement confirmed that this defendant has two freckles on the right side of his neck which are visible in the video depicting the Defendant sexually abusing the little girl. Thus, the weight of the evidence also weighs heavily in favor of detention.

      **C.**      **History and Characteristics of the Defendant**

The government acknowledges that the defendant lacks a criminal record. However, the fact that the defendant has no criminal history – nor record of arrests- does not mean that he has not engaged in prior criminal conduct, particularly in offenses involving the online exploitation of children and the hands-on sexual abuse of children.

This Court is well aware that the online sexual exploitation of children, and the hands-on sexual abuse of children, are crimes that are committed in secret. This secrecy, combined with the overwhelming presence of digital devices and the near universal access to the internet, makes detection of these criminal offenses difficult. As this case demonstrates, the defendant was utilizing the Internet to meet individuals who had various sexual interests and access to children. He communicated with some of these individuals online, and met some of them in person. The sexual assault this defendant committed against a child, which was captured on videotape, occurred well over two years prior to his arrest today. During the execution of the search warrant this morning, law enforcement seized the defendant's cellular telephone. As the forensic examination on this digital device is ongoing, the government is still attempting to determine the full scope of the defendant's criminal conduct. It is anticipated that the examination of this device may lead to additional evidence corroborating the charges the defendant currently faces. Additionally, the government will continue its investigation in order to rule out the existence of other minor victims.

The mere lack of an arrest record's significance should be called into question in cases involving the sexual exploitation and abuse of children, because it is well-known that children often do not disclose sexual abuse, and that these types of crimes are wildly underreported. *See United States v. Gregory Todd Numan*, 3:160cr000065(TMB)(DAK)(February 26, 2018: Expert Testimony of Clinical Psychologist Darrell Turner). In *Numan*, Dr. Turner provided expert testimony to the Court to explain why a reliance on the lack of prior criminal history of an offender charged with sexual offenses committed against children does not serve as a reliable indicator of their future risk for reoffending. As explained by Dr. Turner:

> "One of the main problems is the fact that these offenses are among the most undetected offenses that there are. This is not like bank robbery or murder, where it's generally assumed and expected that it's going to be detected and reported. We know from research that about only about five percent of sexual offenses against children are ever reported.
>
> Of those, of that five percent, about another five percent result in a conviction. So we're talking about an exponentially small number of offenses that are reported and accounted for. So it's sort of akin to saying there were only four drunk people in New Orleans in Mardi Gras this year because there were only four arrests for public intoxication, and it's not a good representation of what's actually going on out there. So to say it without the qualifier that, hey, this is a gross underestimate, but you know, so far, this is what we've been able to find, I think, is misleading and very, very dangerous."

at pages 22-23. *See also* K. London, M. Bruck, S. J. Ceci & D. W. Shuman, *Disclosure of Child Sexual Abuse: What Does the Research Tell Us About the Ways Children Tell?*, 11 PSYCHOLOGY, PUB. POL'Y & L. 1, 194-226 (American Psychological Association, 2005)(finding in a study of adult retrospective victim studies about child sex abuse, approximately 60 – 70% of adults sexually abused as children did not recall disclosing the abuse during childhood); *See also* D. W. Smith, E. J. Letourneau, B. E. Saunders, D. G. Kilkpatrick, H. S. Resnick & C. L. Best,

6

*Delay in Disclosure of Childhood Rape: Results from a National Survey*, 24 CHILD ABUSE & NEGLECT 2, 273-87 (2000)(the results of the study found that only 12% of child rape victims' assaults were reported to law enforcement authorities.).  As such, the fact that the defendant lacks a criminal record, given the ways in which these types of crimes are committed and the reluctance and inability of the victims to disclose, should be given less weight, given the nature of the offense he is currently charged with.

### D. The Nature and Seriousness of the Danger to Any Person or the Community

As detailed above, the production of child sex abuse material, and the sexual assault of young children, presents a serious danger to the community which results in severe mental, emotional, and physical trauma to the countless number of children who are victimized by offenders like the defendant and others with a demonstrated sexual interest in children.   It is this type of harm that led Congress to create the statutory presumption of detention in these cases.

That child pornography offenses are serious is a fact noted by the Supreme Court. At least as early as the landmark decision, New York v. Ferber, 458 U.S. 747 (1982), the Supreme Court referenced numerous research materials detailing the harm to children as a result of the production and trafficking of child pornography.

> "[P]ornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography."

Shouvlin, Preventing the Sexual Exploitation of Children: A Model Act, 17 Wake Forest L.Rev. 535, 545 (1981). *See also* Child Exploitation 292 ("[I]t is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions"); Note, Protection of Children from Use in Pornography: Toward Constitutional and Enforceable

7

Legislation, 12 U.Mich.J. Law Reform 295, 301(1979)(interview with child psychiatrist) ("The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child"). 458 U.S. 758, n.9.

> ...the issue is not only defendant's potential
> abuse of children and his interaction with children
> if on bail, but also his ability, if he is released on bail, to attempt to possess additional child pornography, or to communicate and interact with (via email, internet, or phone) others involved in the possession, sale, and distribution of child pornography or other sexual abuse of children, which would also create a clear danger by facilitating the criminal and dangerous exploitation of children by other individuals.

Moreover, as the Eastern District of New York has found:

*United States v. Reiner*, 468 F.Supp.2d 393, 397 (E.D.N.Y. 2006). The *Reiner* court further found that there were no conditions in that case that could reasonably assure the safety of the community "[i]n this day and age, with devices such as cellphones, Blackberries, and laptops..." Id. at 399; *see also United States v. Blankenship*, 2008 WL 1925137 (S.D.W.Va. April 29, 2008) (S.D.W.Va. April 29, 2008)(unpublished)(noting the ease of accessing the internet by means of various devices and stating "[t]he Court finds that the evidence clearly and convincingly establishes that, confined to his home and electronically monitored, defendant would not be prevented from obtaining the means to access the internet and attempting again to obtain child pornography and in this poses a danger to children and the community"); *United States v. Doyle,* 2007 WL 1097844, *1 (W.D.Va. 2007)(finding danger of future offenses "especially considering that pornographic images of children are widely available on the internet and can be easily accessed by a personal computer"), conviction rev'd on other grounds, 650 F.3d 460 (2011).

When considering the issue of detention, it is important for this Court to consider that sex offenders have a high rate of recidivism. *See Lombard v. United States*, 44 F. Supp. 3d 14, 26 (D.D.C. 2014) (noting that the lower court's concerns about recidivism was supported by

substantial authority (citing *Smith v. Doe,* 538 U.S. 84, 103, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003) ("The risk of recidivism posed by sex offenders is frightening and high.") (citations omitted); *McKune v. Lile,* 536 U.S. 24, 33, 122 S.Ct. 2017, 153 L.Ed.2d 47 (2002) (noting that "[w]hen convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault"); *United States v. Irey,* 612 F.3d 1160, 1214 (11th Cir.2010) ("[T]he threat of recidivism by a pedophile who has sexually abused a child is appalling.") (citation and quotation marks omitted); *United States v. Allison,* 447 F.3d 402, 405–06 (5th Cir.2006) ("Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders.")); *see also United States v. Allison*, 447 F.3d 402, 405-406 (5th Cir. 2006) (Congress explicitly recognized the high rate of recidivism in convicted sex offenders, especially child sex offenders). Indeed, As Judge Posner recently wrote:

> We need evidence-driven law just as we need evidence-driven medicine. Statistical analysis of sex crimes has shown that the best predictor of recidivism is not deportment at an interview but sexual interest in children. R. Karl Hanson, Kelley E. Morton & Andrew J.R. Harris, "Sexual Offender Recidivism Risk: What We Know and What We Need to Know," 989 Annals of the N.Y. Academy of Sciences 154, 157 (2003) (tab.1). Some studies show a high rate of recidivism among pedophilic sex offenders generally, ranging from 10 percent to 50 percent. Ryan C.W. Hall & Richard C.W. Hall, "A Profile of Pedophilia: Definition, Characteristics of Offenders, Recidivism, Treatment Outcomes, and Forensic Issues," 82 Mayo Clinic Proceedings 457, 467 (2007). Another study found that only 6.8 percent of consumers of child pornography had been charged with a new child-pornography offense within 4 years but that the percentage rose to 9.5 percent within 6 years. Angela W. Eke, Michael C. Seto & Jennette Williams, "Examining the Criminal History and Future Offending of Child Pornography Offenders: An Extended Prospective Follow-up Study," Law & Human Behavior, Nov. 19, 2010 (tab.1), www.springerlink.com/content/h4616862621x8616/ (visited June 23, 2011).

*United States v. Garthus*, 552 F.3d 715, 720 (7th Cir. 2011).

This risk of re-offense while on release, in light of the fact that the defendant's charged criminal conduct, a crime of violence involving a minor victim, emphasize that he has been, and continues to be, a danger to some of the most vulnerable members of our community: children. During the search warrant, law enforcement discovered numerous diaries and journals that the defendant had in his residence, meticulously documenting his daily activities. While these diaries are currently being reviewed, a cursory preview uncovered an entry from June of 2019, which references "Dee" and contains abbreviations relating to the nature of the sexual activity that the defendant and "Dee" engaged in. Given the fact that DEFENDANT #1's Facebook profile name was "Dee" (DEFENDANT #1's last name); the timeframe that the defendant and DEFENDANT #1 engaged in Facebook chats; and the date that the video depicting the sexual abuse of Minor Victim #1 were uploaded to DEFENDANT #1's Dropbox account, this is likely a reference to one of the visits the defendant made to DEFENDANT #1's home, during which he expressed his sexual attraction to children and/or engaged in sexual activities with DEFENDANT #1 in the presence of the minor victim. Another diary is disturbing, because it documents in great detail all of the defendant's interactions with two children – who appear to be five and six years old. While specific references to sexual abuse of these children have not been observed, given the nature of the charges in this case, there is great concern for the safety of these two children. As law enforcement continues to investigate this matter, they will attempt to identify these children to determine whether or not they were sexually abused by the defendant. For these reasons, it is clear that the defendant poses a significant danger to the community and, given this risk, there are no condition or combination of conditions that will reasonable keep the community safe if the defendant is released. As such, this factor weighs heavily in favor of detention.

## CONCLUSION

For all of the reasons set forth above, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

Respectfully submitted,

CHANNING D. PHILLIPS
Acting United States Attorney
D.C. Bar. No. 415793


 /s/  *Amy E. Larson*
Amy E. Larson, N.Y. Bar Number 4108221
Assistant United States Attorney
555 Fourth Street, N.W.
Washington, D.C. 20530
Telephone: (202) 252-7863
Email: Amy.Larson2@usdoj.gov